DYK, Circuit Judge,
dissenting.
This should be an easy case, reversing the quite odd decision of the United States Patent and Trademark Office (“PTO”) that it could not consider whether multipronged electrical connections were well known in the prior art. But the majority does not reverse. It affirms. In my view, this case raises important questions regarding the role of the PTO in making obviousness determinations.
The majority holds that patent examiners, in addressing questions of obviousness, may not rely on their expert knowledge and common sense about what is well known in the art except “in narrow circumstances” involving peripheral issues. The narrowness of this exception is illustrated by the holding in this case. Although the claim limitation — a plurality of prongs that provide a detachable mechanical and electrical connection — was well known as of the patent’s 2001 priority date, the majority holds that the examiner could not resort to the common knowledge of one skilled in the art, but rather was confined to considering only the evidence of record.
In my view, the majority’s holding is inconsistent with the Supreme Court’s decision in KSR International Co. v. Teleflex Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 *1368 L.Ed.2d 705 (2007), and will have substantial adverse effects on the examination process. The majority adopts a “[rjigid preventative rule[] that den[ies] factfinders recourse to common sense” even though the Court held such rules “neither necessary under our case law nor consistent with it.” Id. at 421, 127 S.Ct. 1727. Precluding examiners from using their knowledge and common sense significantly impairs their ability to review applications adequately and undermines the purpose of post-grant agency review. I respectfully dissent.
I
The claimed invention is a hearing aid with separate behind-the-ear and in-the-canal components. See '512 patent col. 5 11. 4-6; id. col. 1 11. 17-20. During the initial prosecution of the '512 patent, the examiner rejected all claims as obvious in view of multiple prior art references. With respect to dependent claims 3 and 9, which recite wiring portions “terminated by a plurality of prongs that provide a detachable mechanical and electrical connection,” id. col. 23 11. 43-44, col. 24 11. 37-38, the examiner stated that “providing a plurality of prongs for the electrical connections or for the plugs is known in the art,” and concluded it “would have been obvious to one skilled in the art to provide the prongs for the electrical connections ... for providing [ ] better electrical connections.” J.A. 4282. The applicant did not contest the examiner’s findings. In response to the rejection, the applicant amended the “cushion tip” element of independent claims 1 and 7 to recite “a cushion tip ... wherein during deflection said tip portion assumes an offset angle relative to said tubular body and said speaker module.” J.A. 4294. The applicant’s patentability argument hinged on the novelty of the tip portion. The PTO allowed the claims based on the alleged novelty of the tip portion.
Appellant K/S HIMPP (“HIMPP”) requested inter partes reexamination. The examiner and Board rejected all claims as obvious — except dependent claims 3 and 9 — and found the claims to a hearing aid device with the recited tip portion obvious in view of multiple prior art references. HIMPP argued that claims 3 and 9 were similarly obvious. The only difference between those claims and the rejected claims was “a plurality of prongs that provide a detachable mechanical and electrical connection,” and HIMPP argued that “such detachable connections were known at the time of the alleged invention as concluded by the Examiner during prosecution.” J.A. 138, 140. The examiner in the inter partes reexamination declined to adopt the rejection on the ground that K/S HIMPP submitted “no evidence in support of requester’s contention.” J.A. 415. The Board affirmed the examiner, explaining that “although HIMPP asserts that the content of claims 3 and 9 is ‘well known,’ notably, HIMPP does not direct us to any portion of the record for underlying factual support for the assertion.” J.A. 25. The Board cited no authority for the proposition that examiners cannot rely on common knowledge and common sense.
Neither the examiner nor the Board even addressed the question of whether a plurality of prongs used to make a detachable connection was well known in the art at the time of the patent’s 2001 priority date. Before the examiner, before the Board, and in this court, the patentee never argued that the pronged connection was novel or uncommon. In fact, during oral argument here, the patentee conceded that “if you think about it as just an electrical plug, it is well-known.” Oral Argument Tr. 15:28-32, available at http://www.cafc. uscourts.gov/oral-argument-recordings/all/ himpp.html. Every purchaser of electrical devices in the United States for the past 50 years or more is familiar with multi *1369 pronged electrical connections. The majority here nonetheless sustains the claims based on the PTO’s conclusion that there was no record evidence showing such a connection to be known in the prior art.
II
The question is whether the PTO was obligated to utilize its expert knowledge to determine whether the connection was well known in the prior art. As the Supreme Court has recognized, “the primary, responsibility for sifting out unpatentable material lies in the Patent Office.” Graham v. John Deere Co., 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The assumption that PTO examiners will use their knowledge of the art when examining patents is the foundation for the presumption in 35 U.S.C. § 282(a) that issued patents are valid. See Microsoft Corp. v. i4i Ltd. P’ship, — U.S.-, 131 S.Ct. 2238, 2243, 180 L.Ed.2d 131 (2011) (quoting Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed.Cir.1984) (holding that § 282 codified the common law presumption of validity based on “the basic proposition that a government agency such as the [PTO] was presumed to do its job.” (citing Morgan v. Daniels, 153 U.S. 120, 124, 14 S.Ct. 772, 38 L.Ed. 657 (1894) (the PTO is “a special tribunal, intrusted with full power in the premises”)))).
Just as the PTO’s expert knowledge is the foundation for the presumption of validity, in Dickinson v. Zurko, the Court held that the agency’s expert knowledge was the foundation for the substantial evidence standard of appellate review. 527 U.S. 150, 162, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). That holding rested on the recognition that “the PTO is an expert body, or that the PTO can better deal with the technically complex subject matter, and that the PTO consequently deserves deference.” Id. at 160, 119 S.Ct. 1816. The Court explained that the PTO’s technical expertise was the type of “reason[ ] that courts and commentators have long invoked to justify deference to agency fact-finding.” Id. (citations omitted); see also Kappos v. Hyatt, — U.S.-, 132 S.Ct. 1690, 1700, 182 L.Ed.2d 704 (2012) (recognizing that the “PTO has special expertise in evaluating patent applications”).
Deference to the agency’s expert knowledge is particularly important with respect to obviousness. “Throughout [the Supreme] Court’s engagement with the question of obviousness, [its] cases have set forth an expansive and flexible approach. ...” KSR, 550 U.S. at 415, 127 S.Ct. 1727. The Court emphasized that “[r]igid preventative rules that deny fact-finders recourse to common sense ... are neither necessary under our case law nor consistent with it.” Id. at 421, 127 S.Ct. 1727. The Court specifically rejected the approach that the majority adopts here, stating that “[t]he obviousness analysis cannot be confined by ... overemphasis on the importance of published articles and the explicit content of issued patents.” Id. at 419, 127 S.Ct. 1727. Publications and patents are not sufficient by themselves because “[i]n many fields it may be that there is little discussion of obvious techniques or combinations.” Id.
Ill
The majority’s narrow approach to obviousness here relies primarily on our court’s decision, In re Zurko, 258 F.3d 1379, 1386 (Fed.Cir.2001), which predates the Supreme Court’s decision in KSR. In Zurko, we held that, as to core (as opposed to peripheral) issues, “the Board cannot simply reach conclusions based on its own understanding or experience — or on its assessment of what would be basic knowledge or common sense.” Id. That statement is contrary to the Court’s holding in KSR that “[o]ften[] it will be necessary for a court to look to ... the background *1370 knowledge possessed by a person having ordinary skill in the art” when examining obviousness, 550 U.S. at 418, 127 S.Ct. 1727 (emphasis added), and that “[r]igid preventative rules that deny factfinders recourse to common sense ... are neither necessary under our case law nor consistent with it.” Id. at 421, 127 S.Ct. 1727.[1] The majority’s approach here is inconsistent with KSR itself and also with our ;post-KSR approach. Following KSR, we recognized that the Court “expanded the sources of information for a properly flexible obviousness inquiry to include ... the background knowledge, creativity, and common sense of the person of ordinary skill.” Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324, 1329 (Fed.Cir.2009). Consequently, obviousness inquiries “include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference.” Id.
The majority’s approach is also contrary to case law of our predecessor court, which, prior to Zurko, repeatedly held that an examiner could rely on verifiable facts within his knowledge to reject claims. The court expressly held that the Board “may take notice of facts beyond the record which, while not generally notorious, are capable of such instant and unquestionable demonstration as to defy dispute.” In re Ahlert, 57 C.C.P.A. 1023, 424 F.2d 1088, 1091 (1970) (citing In re Knapp-Monarch Co., 49 C.C.P.A. 779, 296 F.2d 230 (1961)). The court explained that, in the context of patent examination, judicial notice principles are “designed with the purpose in mind of fully utilizing the independent and specialized technical expertise of the Patent Office examiners while balancing the applicant’s rights to fair notice and an opportunity to be heard.” Id. at 1092.
Under that approach, the court repeatedly affirmed rejections based on the examiner’s knowledge that a limitation was well known in the art. See, e.g., In re Fox, 471 F.2d 1405, 1407 (1973) (affirming rejection where examiner took “[official notice of the existence in the art of such recording and re-recording steps” for copying the contents of one audio tape onto another); In re Larson, 52 C.C.P.A. 930, 340 F.2d 965, 968 (1965) (affirming rejection because “the use of a one piece construction instead of the structure disclosed in [the prior art] would be merely a matter of obvious engineering choice”); In re Soli, 50 C.C.P.A. 1288, 317 F.2d 941, 946 (1963) (examiner stating that “a control is standard procedure throughout the entire field of bacteriology” did not have to cite supporting prior art); In re Dulberg, 48 C.C.P.A. 992, 289 F.2d 522, 524 (1961) (upholding rejection of claims where prior art did not disclose limitation of lipstick holder but it was “obvious and common to remove obstructions from the interior of tubular articles by pushing them out by means of an inserted member”); In re Stevens, 41 C.C.P.A. 864, 212 F.2d 197, 198-99 (1954) (adjustable fishing rod handle was not patentable as substitution was obvious over prior art).
The majority’s concerns about potential unfairness in relying on the examiner’s specialized knowledge are not well taken in view of recognized safeguards. First, to ensure meaningful challenge and review, we have held that examiners must state on the record that they are relying on a fact well known in the art and provide their rationale for doing so. In Perfect Web, we explained that “to invoke ‘common sense’ or any other basis for extrapolating from prior art to a conclusion of obviousness, a *1371 district court must articulate its reasoning with sufficient clarity for review.” 587 F.3d at 1330; see also TriMed, Inc. v. Stryker Corp., 608 F.3d 1333, 1342 (Fed.Cir.2010) (“Although reliance on common sense does not require a specific evidentiary basis ... a district court must articulate its reasoning with sufficient clarity for review”) (internal quotation marks omitted).
Second, we have held that applicants must have the opportunity to challenge the examiner’s determination that particular features were common knowledge in the art. See Ahlert, 424 F.2d at 1091 (requiring that applicants be given “the opportunity to challenge the correctness of the assertion or the notoriety or repute of the cited reference”); MPEP § 706 (“The goal of examination is to clearly articulate any rejection early in the prosecution process so that the applicant has the opportunity to provide evidence of patentability and otherwise reply completely at the earliest opportunity.”); MPEP § 2144.04(C) (“To adequately traverse such a finding, an applicant must specifically point out the supposed errors in the examiner’s action, which would include stating why the noticed fact is not considered to be common knowledge or well-known in the art.” (citing 37 C.F.R. § 1.111(b))).
I respectfully dissent from the majority’s affirmance of the Board. I would reverse the Board’s decision and remand for proceedings consistent with the Supreme Court’s decision in KSR.

. To the extent that the MPEP § 2144.03 reiterates the holding of Zurko, it is also inconsistent with KSR.